**IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF ARKANSAS
NORTHERN DIVISION**

ADAM HILL                                                                                            PLAINTIFF

v.                                             1:18-cv-00089-JM-JJV

DALE REED, Chief Deputy Director,
Arkansas Department of Correction; *et al.*                                      DEFENDANTS

## PROPOSED FINDINGS AND RECOMMENDATIONS

### INSTRUCTIONS

The following recommended disposition has been sent to United States District Judge James M. Moody, Jr.   Any party may serve and file written objections to this recommendation. Objections should be specific and should include the factual or legal basis for the objection.   If the objection is to a factual finding, specifically identify that finding and the evidence that supports your objection.   An original and one copy of your objections must be received in the office of the United States District Court Clerk no later than fourteen (14) days from the date of the findings and recommendations.   The copy will be furnished to the opposing party.   Failure to file timely objections may result in waiver of the right to appeal questions of fact.

If you are objecting to the recommendation and also desire to submit new, different, or additional evidence, and to have a hearing for this purpose before the District Judge, you must, at the same time that you file your written objections, include the following:

1.      Why the record made before the Magistrate Judge is inadequate.

2.      Why the evidence proffered at the hearing (if such a hearing is granted) was not offered at the hearing before the Magistrate Judge.

3.      The details of any testimony desired to be introduced at the new hearing in the form of an offer of proof, and a copy, or the original, of any documentary or other non-testimonial

1

evidence desired to be introduced at the new hearing.

From this submission, the District Judge will determine the necessity for an additional evidentiary hearing.   Mail your objections and "Statement of Necessity" to:

> Clerk, United States District Court
> Eastern District of Arkansas
> 600 West Capitol Avenue, Suite A149
> Little Rock, AR 72201-3325

## **DISPOSITION**

## I.    INTRODUCTION

Adam Hill ("Plaintiff") was a prisoner in the custody of the Arkansas Department of Correction ("ADC") when he commenced this *pro se* action pursuant to 42 U.S.C. § 1983.   (Doc. No. 2).   He was recently released from prison.   (Doc. No. 225.)   Plaintiff's remaining claims are that, while he was in the Ester Unit from April to August 2018, Defendants ADC Director Wendy Kelley, ADC Deputy Director Dexter Payne, Deputy Warden Michelle Gray, Lieutenant Ricky Brooks, and Correctional Officer Lolita Shepard retaliated against him in four different ways for filing a lawsuit and numerous prison grievances.[1]   (Doc. No. 34.)   In particular, Plaintiff says he was retaliated against when: (1) Defendant Brooks refused to sign a grievance on June 22, 2018; (2) Defendants Brooks and Shepard searched his cell later that day; (3) Defendant Brooks denied him kiosk call on July 8, 2018; and (4) Defendants Kelley, Payne, and Gray transferred him on August 29, 2018.   (*Id.*)   Plaintiff brings these retaliation claims against Defendants in both their individual and personal capacities.   (*Id.*)   And, he seeks damages as well as injunctive relief.   (*Id.*)

Plaintiff has filed a Motion for Partial Summary Judgment on his retaliation claim against

---

[1]  All other claims have been dismissed without prejudice.   (Doc. Nos. 21; 161.)

Defendant Gray.   (Doc. Nos. 228; 229; 230; 231.)   Defendant Gray has filed a Response. (Doc. Nos. 241; 242; 243.)   Defendants Gray, Kelley, Payne, Brooks, and Shepard have filed a Motion for Summary Judgment on all retaliation claims raised against them.   (Doc. Nos. 238; 239; 240).   Plaintiff has not filed a Response, and the time to do so has expired.   After careful consideration and for the following reasons, I conclude Plaintiff's Motion for Partial Summary Judgment should be DENIED, Defendants' Motion for Summary Judgment should be GRANTED, and Plaintiff's retaliation claims against all remaining Defendants should be DISMISSED WITH PREJUDICE.

## II.   SUMMARY JUDGMENT STANDARD

Under Rule 56(c) of the Federal Rules of Civil Procedure, summary judgment is proper "if the pleadings, depositions, answers to interrogatories and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law.   Fed. R. Civ. P. 56(c); *Celotex v. Catrett*, 477 U.S. 317, 321 (1986).   When ruling on a motion for summary judgment, the court must view the evidence in a light most favorable to the nonmoving party.   *Naucke v. City of Park Hills*, 284 F.3d 923, 927 (8th Cir. 2002).   The nonmoving party may not rely on allegations or denials but must demonstrate the existence of specific facts that create a genuine issue for trial.   *Mann v. Yarnell*, 497 F.3d 822, 825 (8th Cir. 2007).   The nonmoving party's allegations must be supported by sufficient probative evidence that would permit a finding in his favor on more than mere speculation, conjecture, or fantasy.   *Id.* (citations omitted).   A dispute is genuine if the evidence is such that it could cause a reasonable jury to return a verdict for either party; a fact is material if its resolution affects the outcome of the case.   *Othman v. City of Country Club Hills*, 671 F.3d 672, 675 (8th Cir. 2012).   Disputes that are not genuine or that are about facts that are not material

will not preclude summary judgment.  *Sitzes v. City of West Memphis, Ark.*, 606 F.3d 461, 465 (8th Cir. 2010).

## III.    ANALYSIS

### A.    Official Capacity Claims

Defendants argue they are entitled to sovereign immunity from the official capacity claims. I agree.   The doctrine of sovereign immunity, which is derived from the Eleventh Amendment, precludes the recovery of monetary damages from state officials acting in their official capacities, unless the state has waived its immunity.   *Will v. Mich. Dep't of State Police*, 491 U.S. 58, 71 (1989*)*; *Kruger v. Nebraska*, 820 F.3d 295, 301(8th Cir. 2016).   Defendants are state officials, and Arkansas has not waived its Eleventh Amendment immunity.   *Burk v. Beene*, 948 F.2d 489, 493-94 (8th Cir. 1991).   Thus, they are entitled to sovereign immunity on Plaintiff's request for monetary damages against them, in their official capacities.

Sovereign immunity does not apply to Plaintiff's request for prospective injunctive relief. *Larson v. Kempker,* 414 F.3d 936, 939-40 (8th Cir. 2005); *Murphy v. State of Ark.*, 127 F.3d 750, 754 (8th Cir. 1997).   But, because Plaintiff is no longer in custody, his request for injunctive relief is moot.   *Zajrael v. Harmon*, 677 F.3d 353, 354(8th Cir. 2012); *Owens v. Isaac,* 487 F.3d 561, 564 (8th Cir. 2007).   For these reasons, I recommend Plaintiff's official capacity claims against Defendants be dismissed with prejudice.

### B.    Individual Capacity Claims

Defendants argue they are entitled to qualified immunity from the individual capacity claims.   I also find merit to this argument.   Qualified immunity protects government officials who acted in an objectively reasonable manner and shields them from liability when their conduct does not violate "clearly established statutory or constitutional rights of which a reasonable person

would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982).  Qualified immunity is a question of law, not fact.  *McClendon v. Story Cty. Sheriff's Office*, 403 F.3d 510, 515 (8th Cir. 2005).  Thus, issues concerning qualified immunity are appropriately resolved on summary judgment.  *See Mitchell v. Forsyth*, 472 U.S. 511, 526 (1985) (the privilege is "an immunity from suit rather than a mere defense to liability; and like an absolute immunity, it is effectively lost if a case is erroneously permitted to go to trial").

In this case, Defendants are entitled to qualified immunity if: (1) the facts, viewed in the light most favorable to Plaintiff, do not establish a violation of his constitutional right to be free from retaliation; or (2) the constitutional right was not clearly established at the time of the alleged violation, such that reasonable officials would not have known their actions were unlawful.  *See Pearson v. Callahan*, 555 U.S. 223, 232 (2009); *Cullor v. Baldwin*, 830 F.3d 830, 836 (8th Cir. 2016).  Courts may "exercise their sound discretion in deciding which of the two prongs of the qualified immunity analysis should be addressed first in light of the circumstances in the particular case at hand."  *Pearson,* 555 U.S. at 232; *Nelson v. Corr. Med. Servs.*, 583 F.3d 522, 528 (8th Cir. 2009).  I find Defendants are entitled to qualified immunity based on the first prong of the analysis.

Specifically, to establish a violation of his constitutional right to be free from retaliation, there must be evidence, viewed in the light most favorable to Plaintiff, that: (1) he engaged in constitutionally protected activity; (2) Defendants took adverse action "that would chill a person of ordinary firmness" from engaging in that activity; and (3) retaliation was the actual motivating factor for the adverse action.  *See Haynes v. Stephenson*, 588 F.3d 1152, 1156-(8th Cir. 2009); *Lewis v. Jacks*, 486 F.3d 1026, 1028 (8th Cir. 2007).  Plaintiff engaged in constitutionally protected activity when he filed grievances and a lawsuit.  *See Beaulieu v. Ludeman*, 690 F.3d

1017, 1025 (8th Cir. 2012); *Lewis*, 486 F.3d at 1029.    But, the evidence viewed in the light most favorable to him does not satisfy the other two elements.    I will explain this conclusion as to each of Plaintiff's four retaliation claims.

### 1.    June 22, 2018 Refusal to Sign a Grievance

In May 2018, Plaintiff filed three grievances against Defendant Brooks, which he later voluntarily "waived" or dismissed.    (Doc. Nos. 34 at 9; 239-1 at 15.)    On June 22, 2018, Defendant Brooks was working in the control booth with Defendant Shepard.    (Doc. Nos. 34; 127-4; 127-6; 239-1 at 9-10; 239-9).    Plaintiff asked Defendant Brooks to sign grievance ESU-18-106, which alleged wrongdoing by a non-party.    (*Id*.)    The grievance did not involve a time sensitive matter.    (*Id.*)    Defendant Brooks said he was too busy and told Plaintiff to have the Zone 1 sergeant, who was the designated grievance officer, sign the grievance.    (*Id*.)    The Zone 1 sergeant did so about an hour later, and it is undisputed it was timely filed. (*Id*.)

Plaintiff's evidence of a retaliatory motive is slim given his admission that he waived or dismissed his May 2018 grievances against Defendant Brooks.    *See Lewis,* 486 F.3d at 1029 (to avoid summary judgment, a prisoner must present "affirmative evidence of a retaliatory motive"); *Johnson v. Hamilton,* 452 F.3d 967, 973 (8th Cir. 2006) (a prisoner "carries a substantial burden to prove that retaliation was the actual motivating factor" for the adverse action).

More importantly, nothing in the evidence suggests waiting one hour to get a non-emergent grievance signed is something that would "chill a prisoner of ordinary firmness" from engaging in protected activity.    *See Santiago v. Blair*, 707 F.3d 984, 992 (8th Cir. 2013).    In other words, Defendant Brooks' refusal to sign a single, non-emergent, and timely filed grievance - even if done for retaliatory reasons - is insufficient to sustain a constitutional violation.    *See Garcia v. City of Trenton,* 348 F.3d 726, 728 (2003) (the ordinary firmness test "is designed to weed out trivial

6

matters from those deserving the time of the courts as real and substantial violations of the First Amendment"); *Naucke* v. *City of Park Hills*, 284 F.3d 923, 928 (8th Cir. 2008) (acknowledging that "it would trivialize the First Amendment to hold that harassment for exercising the right of free speech was always actionable no matter how unlikely to deter a person of ordinary firmness from that exercise"); *Thaddeus-X v. Blatter*, 175 F.3d 378, 398 (6th Cir. 1999) ("prisoners may be required to tolerate more than public employees . . . before action taken against them is considered adverse").    Thus, I conclude Defendant Brooks is entitled to qualified immunity on this retaliation claim, and I recommend it be dismissed with prejudice.

### 2.    June 22, 2018 Cell Search

On June 22, 2018, Plaintiff wrote grievance ESU-18-108 alleging Defendant Brooks wrongfully refused to sign grievance ESU-18-106, while working in the control booth earlier that day.    (Doc. Nos. 34; 127-5; 127-6; 239-9 at 9-10; 239-11.)    Plaintiff named Defendant Shepard as a witness, but he did not allege she did anything wrong.    (*Id.*)    The Zone 1 sergeant signed and processed the grievance.    (*Id.*)

An hour later, Defendant Shepard conducted her evening security rounds, during which she was required to look into, but not enter, each cell and randomly pick three cells to thoroughly search.    (*Id.*)    Defendant Shepard chose three prisoners, not including Plaintiff, to search.    (*Id.*)    While looking into Plaintiff's cell, Defendant Shepard noticed empty pill packs in his window, which is a violation of ADC rules.    (*Id.*)    Based on that infraction, Defendant Shepard decided to search Plaintiff's cell, with Defendant Brooks' assistance.    (*Id.*)    Defendant Shepard found two rubber bands, which are contraband and something for which he could have been disciplined. (*Id.*) Defendant Brooks instructed Defendant Shepard to remove the rubber bands but *not* charge Plaintiff with a disciplinary infraction.    (*Id.*)    Defendant Shepard also searched a large, tattered

envelope containing numerous papers.    (*Id.*).    In the Amended Complaint, Plaintiff claims Defendant Shepard tore his legal documents while doing so. (Doc. No. 34.)    But, during his deposition, Plaintiff admitted a document was torn, but not destroyed, and that is consistent with the photograph attached to his deposition.    (Doc. No. 239-1 at 15-17, 22.)    During the search, Defendant Brooks thought Plaintiff called him a racially hostile name.    (Doc. Nos. 239-1 at 15-16; 239-9.)    After Plaintiff denied doing so, Defendants Brooks and Shepard left his cell without filing any disciplinary charges against him.    (*Id.*)

Plaintiff contends Defendants Brooks and Shepard searched his cell, seized two rubber bands, and tore a page of his documents to retaliate against him for filing grievance ESU-18-108 against Defendant Brooks.    But, it is undisputed Plaintiff named Defendant Shepard in that grievance as a witness only, and that he did not say she did anything wrong.    Also, Defendant Shepard declares, in her sworn declaration, that she was not aware Plaintiff had filed a grievance against Defendant Brooks when she decided to search his cell.    (Doc. No. 239-11.)    Plaintiff has not provided any evidence refuting her testimony or otherwise demonstrating Defendant Shepard had a motive to retaliate against him.    Thus, she is entitled to qualified immunity.

As to Defendant Brooks, there is no evidence he was aware Plaintiff had filed grievance ESU-18-108 against him before he agreed to help Defendant Shepard search his cell.    In fact, during his deposition Plaintiff admitted he had no such evidence, and he said Defendant Brooks possibly had a retaliatory motive based on the three dismissed grievances he had filed several months before the search.    (Doc. No. 239-1 at 15.)    A prisoner has a "heavy evidentiary burden" to establish retaliation, and "[m]erely alleging that an act was retaliatory is insufficient." *Meuir v. Greene Cty. Jail Emps.,* 487 F.3d 1115, 1119 (8th Cir. 2007); *see also Cooper v. Schriro*, 189 F.3d 781, 784 (8th Cir. 1999) (mere speculative and conclusory allegations are insufficient to establish

a retaliation claim).    And, it is undisputed Defendant Brooks did *not* charge Plaintiff with any disciplinary infractions for possessing contraband or calling him a racially hostile name, which is something he would have done if he wanted to retaliate against Plaintiff.    To proceed to trial, a prisoner must have evidence "retaliation was the actual motivating factor" and that the adverse action would not have occurred "but for an unconstitutional, retaliatory motive." *Beaulieu,* 690 F.3d at 1025 (8th Cir. 2012); *Haynes,* 588 F.3d at 1157 (same).    In other words, "[e]ven at summary judgment, the burden is on the prisoner to prove that but for an unconstitutional, retaliatory motive" the adverse consequence would not have occurred.    *Webb v. Hedrick*, No. 09-2896, 2010 WL 4366438, *1 (8th Cir. Nov. 5, 2010) (unpublished opinion).    Plaintiff's evidence falls short here.    Thus, I conclude Defendants Brooks and Shepard are entitled to qualified immunity on this retaliation claim, and I recommend it be dismissed with prejudice.

### 3.    July 8, 2018 Kiosk Call

Plaintiff says Defendant Brooks did not let him go to kiosk call on July 8, 2018, to retaliate against him for filing grievances against him.    (Doc. No. 34).    In his sworn declaration, Defendant Brooks explains that during kiosk call, which is once a day on weekdays, prisoners are allowed to go to a station to download music.    (Doc. No. 239-9.)    The parties dispute whether Plaintiff was wrongfully in the hallway for kiosk call when Defendant Brooks ordered him to return to his barrack.    (Doc. Nos. 239-1 at 21-22; 239-9; 239-10.)    But, that factual dispute is immaterial because the denial of kiosk call - on a single day- is not something that would chill a prisoner of ordinary firmness from filing grievances.    *See Garcia,* 348 F.3d at 728; *Naucke,* 284 F.3d at 928.    And, the parties agree Defendant Brooks did not issue a disciplinary against Plaintiff for improperly being in the hallway.    (*Id.*)    For these reasons, I conclude Defendant Brooks is entitled to qualified immunity on this retaliation claim, and I recommend it be dismissed with

prejudice.

### 4.    August 29, 2018 Transfer to Bowie County Correctional Center

Finally, Plaintiff alleges Defendants Kelley, Payne, and Gray transferred him to the Bowie County Correctional Facility in Texarkana, Texas ("BCCF") to retaliate against him for filing a lawsuit and numerous grievances.[2]    The facts underlying this claim are somewhat complex.

In April 2018, Plaintiff was transferred to the Ester Unit, where Defendant Gray was the Deputy Warden.    (Doc. Nos. 34; 230; 231.)    Soon thereafter, Plaintiff filed a grievance alleging Defendant Gray wrongfully denied his request for a one-man cell.    (Doc. No. 241-6.)    On May 29, 2018, Defendant Gray called Plaintiff into her office to discuss the matter.    (*Id.*)    During the recorded conversation, Plaintiff initially said he wanted a one-man cell because the inmates in his barrack were loud and kept him up at night. (*Id.*)    When Defendant Gray explained there was a waiting list for a one-man cell under such circumstances, Plaintiff said inmates at other units had called him a snitch and threatened him for reporting that he had been sexually assaulted, in 2016, by two nurses working at the North Central Unit.[3]    (*Id.*)    But, Plaintiff did not make that allegation in his grievance.    (*Id.*)    After Plaintiff verified no prisoners at the Ester Unit had threatened him, Defendant Gray said she would put him on the waiting list for the one-man cell. (*Id.*)    She also told Plaintiff to immediately contact her or a guard if anybody at the Ester Unit threatened him.    (*Id.*)

---

[2]    The ADC has a contractual agreement with the BCCF to house inmates when overcrowding becomes an issue in the Arkansas units.    (Doc. No. 239-8.)

[3] Plaintiff reported the 2016 sexual abuse in May 2017, while he was in the Tucker Unit. (Doc. Nos. 231; 242).    Defendant Gray, who was the Deputy Warden at the Tucker Unit at that time, started an internal investigation.    (*Id.*)    In March 2019, both nurses pled guilty to sexual assault in the fourth degree.    (Doc. No. 231 at 65-68.)

On August 1, 2018, the Ester Unit classification officer submitted Plaintiff's name to the ADC classification officer as an inmate eligible for transfer to the BCCF or another ADC unit. (Doc. No. 239-4; 239-5; 239-7; 239-8.)    On August 7, 2018, the ADC classification officer submitted a list of ADC prisoners eligible for transfer to a committee consisting of various medical, mental health, and BCCF officials.    (*Id*.)    On an unspecified date, the committee chose five inmates, including Plaintiff and another prisoner from the Ester Unit, for transfer to the BCCF. (*Id*.)    Importantly, the classification officers and committee members are *not* defendants in this lawsuit.

On August 15, 2018, Plaintiff served Defendant Kelley, Defendant Payne, and Telly Gray, who is Defendant Gray's husband, with his Complaint in *Hill v. Williams,* 1:18-cv-48-BSM-PSH.[4] (Doc. Nos. 2; 15; 21; 22.) On August 27, 2018, the classification officer sought Defendant Gray's authorization to transfer Plaintiff and the other Ester Unit prisoner for "bed fills."    (Doc. No. 239-7.)    Defendant Gray signed the request, and Plaintiff was transferred to the BCCF on August 29, 2018.    (*Id.*)    Plaintiff says the transfer was a hardship because he was further from his family and unable to participate in a re-entry program.    (*Id*.)    Approximately a year later, Plaintiff was released from prison. (*Id*.)

First, Plaintiff alleges Defendants Kelley and Payne transferred him to the BCCF in retaliation for filing *Hill v. Williams.*    But, Defendant Kelley, Defendant Payne, and both non-party classification officers say Payne and Kelley had *no role* in Plaintiff's transfer to the BCCF. (Doc. Nos. 239-2; 239-3; 239-4; 239-8).    Plaintiff has not produced any contrary evidence.

---

[4]  In that lawsuit, Plaintiff claims: (1) Defendant Payne refused to transfer him to another unit in retaliation for reporting the 2016 sexual assault; (2) Defendant Kelley failed to take corrective action when he claimed he was being retaliated against for reporting the sexual assault, and (3) Telly Gray, who was a correctional officer at the North Central Unit, subjected him to cruel and unusual punishment during a random drug test in 2017.

Thus, I conclude Defendants Kelley and Payne are entitled to qualified immunity, and I recommend Plaintiff's retaliatory transfer claims against them be dismissed with prejudice.

Plaintiff says Defendant Gray transferred him to the BCCF in retaliation for him filing a lawsuit against her husband, reporting the sexual assault at the North Central Unit, and filing numerous grievances at the Ester Unit.   The first allegation clearly has no merit because it is undisputed the Ester Unit classification officer started Plaintiff's transfer (by placing his name on the transfer list) fourteen days *before* Telly Gray was served.   The second allegation is also flawed because there is no evidence she had any motive to retaliate against Plaintiff stemming from his 2016 sexual assault.   Instead, it is undisputed Defendant Gray took Plaintiff's sexual assault allegations seriously, started an internal investigation into the matter, and offered to put Plaintiff in protective custody if anyone at the Ester Unit threatened him or otherwise posed a danger to him.   Finally, Plaintiff claims he was transferred for filing approximately twenty-five grievances while he was at the Ester Unit.   Although Defendant Gray was named in only one of those grievances, it is plausible that his frequent filings *could* have been a motive for his transfer.

However, even if the Court presumes Defendant Gray had a retaliatory motive, Plaintiff has not produced any evidence retaliation was the actual motivating factor for his transfer. *See Beaulieu*, 690 F.3d at 1025 (when "raising a retaliatory transfer claim, the prisoner . . . face[s] a substantial burden in attempting to prove that the actual motivating factor for his transfer was the impermissible retaliation"); *Goff v. Burton*, 7 F.3d 734, 737 (8th Cir. 1993) (same).   To the contrary, the non-party classification officers say, in their sworn declarations, Defendant Gray was not involved, in any way, in their decision to put him on the transfer eligibility list.   Plaintiff has not refuted their testimony.   And, it is undisputed a committee selected Plaintiff and four other inmates for transfer.   According to the evidence in the record, the only thing Defendant Gray did

was approve Plaintiff and another Ester Unit inmate for transfer, *as requested by non-parties to this lawsuit*.[5]    That is insufficient to support a retaliatory transfer claim.    *See Bitzan v. Bartruff*, 916 F.3d 716, 717 (8th Cir. 2019) (affirming summary judgment were there was no evidence connecting several defendants to the allegedly retaliatory conduct); *Madewell v. Roberts*, 909 F.2d 1203, 1208 (8th Cir. 1990) (§ 1983 liability requires causal link to, and direct responsibility for, the alleged deprivation of rights).    Thus, I conclude Defendant Gray is entitled to qualified immunity, and I recommend Plaintiff's retaliatory transfer claim against her be dismissed with prejudice.

## IV.    CONCLUSION

IT IS, THEREFORE, RECOMMENDED that:

1.    Plaintiff's Motion for Partial Summary Judgment (Doc. No. 228) be DENIED.

2.    Defendants' Motion for Summary Judgment (Doc. No. 238) be GRANTED, and Plaintiff's retaliation claims against Defendants Kelley, Payne, Gray, Brooks, and Shepard be DISMISSED with prejudice.

3.    The Court certify, pursuant to 28 U.S.C. § 1915(a)(3), that an *in forma pauperis* appeal from an Order adopting this recommendation and the accompanying Judgment would not be taken in good faith.

DATED this 4th day of November 2019.

---

[5] Plaintiff alleges Defendant Gray changed his classification level from minimum to medium security so that he could be transferred to the BCCF.    (Doc. No. 231 at 45.)    But, he has no evidence only medium security inmates were eligible for transfer to the BCCF or that Defendant Gray changed his classification level.    Also, the transfer document Defendant Gray signed lists Plaintiff's classification level as "Minimum (Trusty)."    (Doc. No. 239-7.)    Finally, the document Plaintiff believes demonstrates this classification level was changed says the *transfer priority level* was medium, and not that Plaintiff's classification level was medium.    (Doc. No. 231 at 45.)

_____
JOE J. VOLPE
UNITED STATES MAGISTRATE JUDGE

14